IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DARNELL L. POLITE,<br><br>Defendant. | 8:21-CR-166<br><br>ORDER RE: MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS |

This matter is before the Court for its review of the Magistrate Judge's Findings and Recommendation, Filing 59, denying Defendant's Motion to Suppress, Filing 26. Defendant timely filed an Objection to the Findings and Recommendation, challenging the Magistrate Judge's ruling. Filing 62. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a de novo review of the Magistrate Judge's Findings and Recommendation. The Court concurs in the Magistrate Judge's factual findings and legal analysis.[1]

The defendant, Darnell L. Polite, stands accused of possession with intent to distribute fifty grams or more of methamphetamine (actual) and the use or possession of a firearm in furtherance of a drug-trafficking crime. Filing 1. He moves for suppression of "all physical evidence and statements obtained by law enforcement as a result of the warrantless entry into and search of his residence in Omaha, Nebraska on April 8, 2021." Filing 26 at 1. The Honorable Susan M. Bazis, Magistrate Judge, held a hearing on Defendant's Motion on December 7, 2021. Filing 49. She heard testimony from police officers who were on-scene at Polite's residence and considered evidence offered by the parties, including body camera video from officers who were present. *See*

---

[1] In the interest of brevity, the Court will not provide a full analysis of all legal issues considered by Magistrate Judge Bazis. The Court fully incorporates Judge Bazis' ruling in this order. *See* Filing 59.

1

Filing 50; Filing 51; Filing 54; Filing 59. Judge Bazis also considered supplemental briefing by the parties. Filing 55; Filing 56; Filing 57; Filing 58; Filing 59.

The record establishes police were dispatched to apartment six at 4005 Hartman Circle, Omaha, Nebraska, on April 8, 2021 regarding three people suffering from apparent drug overdoses. Filing 54 at 5-6, 8. Among others, Sergeant Daniel Martin, then of the Omaha Police Department's Gang Unit, responded to the call. Filing 54 at 5-6. First responders administered Narcan to the victims in apartment six; two of them became responsive and spoke with Sergeant Martin. Filing 54 at 9-10. The third victim remained unresponsive and was transported to the hospital. Filing 54 at 12. While speaking with Sergeant Martin, the responsive victims indicated they had "just" gotten the drugs; one of the responsive victims informed him they had gotten the drugs from "two doors down," and the other confirmed the drugs had come from apartment eight. Filing 54 at 8. Martin also noted during his testimony that apartment eight had been the target of prior investigations concerning drug distribution; part of the reason he responded to the call for the overdose was because of his prior experience in the apartment complex. Filing 54 at 11, 25.

Sergeant Martin and other officers proceeded to apartment eight very soon after speaking with the victims. Filing 54 at 11. Sergeant Martin testified he proceeded urgently because, in his experience, drug use often occurs where drugs are sold, and it was likely there were other victims in the apartment from which the "bad batch" of cocaine that caused the overdoses had come. Filing 54 at 11-12. He can be heard voicing similar concerns just before he entered apartment eight on the video. Upon arrival at apartment eight, Sergeant Martin observed one alert occupant through a window. Filing 54 at 25-26. After being commanded to do so, she opened the door, and Martin and other officers forced entry, guns drawn, and executed a protective sweep of the apartment in search of other potential victims and dangers to the officers. Filing 54 at 12-15. Four of the five

2

occupants present were taken outside while officers verified there were no other victims in the apartment; Polite was permitted to sit in his kitchen because he had only one foot. Filing 54 at 12-17. All of the occupants, including Polite, were promptly placed in handcuffs. Filing 54 at 27. While clearing the apartment, an officer observed marijuana in one of the rooms. Filing 54 at 14.

With the apartment cleared and all prior occupants but the defendant outside, Sergeant Martin sought and received confirmation from Polite that it was his apartment, explained why officers were there, and sought his permission to conduct a search. Filing 54 at 15. Polite did not consent to a search. Filing 54 at 15. Martin then told another officer to begin the process of obtaining a warrant and told Polite that police would request a warrant from a judge. Filing 54 at 15-16. Body camera footage reveals Sergeant Martin explained to Polite that he was not accusing him of illegal activity but was investigating the apartment as the source of the drugs. He also told Polite that it would likely take hours to obtain a warrant, so they would all have to hang out.

Due to inclement weather, officers allowed the other occupants, aside from one who was arrested and removed from the premises, back into the apartment and had them sit handcuffed in the living room. Filing 54 at 15-16. Officers searched the area where they sat prior to letting them in for officer safety; nothing of evidentiary value was found. Filing 54 at 15-16. Polite consented to this limited search, as recorded on Martin's body camera.

During the nearly three hours it took for the warrant to arrive, Polite, the other detained occupants, and officers spoke with each other occasionally about a variety of matters. Filing 54 at 16-17. Sergeant Martin testified that none of this conversation was designed to illicit information relevant to his case, Filing 54 at 16-17, and body camera footage indicates the same. Once the warrant arrived, officers searched the apartment and seized methamphetamine, a firearm, and marijuana. Filing 54 at 18, 31, 36. Subsequently, Martin directed the arrest of one of the occupants,

3

Elijah Granger, who Polite identified as a cousin. Filing 54 at 18. Sergeant Martin's body camera recorded Polite asking about the officers' intentions for his cousin as he was being led out of the apartment. In response, Martin explained to Polite that Granger was going to jail for the "dope in the apartment." Polite then professed that Granger did nothing wrong and had no clue about what was happening. Sergeant Martin explained that because both men were in the apartment, Granger would also be arrested. Polite continued to insist upon his cousin's innocence. Sergeant Martin then went outside and informed officers that Granger was to be released.

When Sergeant Martin returned to the apartment, Polite again insisted his cousin was innocent. Martin is then heard on the video stopping him and telling him he was going to advise him of his rights before he said anything else; he then *Mirandized* Polite. Filing 54 at 20. Of the occupants that had been in the living room leading up to and during the full search of the home, only Polite was ultimately arrested. Filing 54 at 31.

Defendant contends that officers' initial, warrantless entry into his apartment was in violation of the Fourth Amendment, and thus all evidence and statements subsequently obtained should be excluded. Filing 26. Defendant also seeks exclusion of any pre-*Miranda*-warning statements he made to officers, as products of an unwarned custodial interrogation in violation of his Fifth Amendment rights. Filing 26. The government contends the officers' warrantless entry into the home was justified by the exigent circumstances exception to the general requirement for a warrant. Filing 38 at 3-6. The government further contends Defendants statements were voluntary, not the product of custodial interrogation, and therefore not obtained in violation of the Constitution. Filing 38 at 6-7.

Judge Bazis first found the officers' warrantless entry into Defendant's home was justified by Sergeant Martin's belief that it was likely there were, or very soon would be, additional victims

of a bad batch of narcotics in the apartment. Filing 59 at 7-8. Indeed, warrantless entry can be justified "without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." *United States v. Ramirez*, 676 F.3d 755, 759 (8th Cir. 2012) (quoting *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996)). In the case of the potential need to render emergency aid, officers must have "an objectively reasonable basis to believe that entry is necessary," based upon the "facts known to the officers when they decided to enter the residence." *United States v. Sanders*, 4 F.4th 672, 677 (8th Cir. 2021) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006); *Burke v. Sullivan*, 677 F.3d 367, 371 (8th Cir. 2012)). Here, officers were directly informed by overdose victims that they had "just" purchased a likely dangerous batch of narcotics from Defendant's apartment, and Sergeant Martin knew, based on his years of experience, that it would be rare to find a home in which drugs are sold but not consumed. Thus, the Court agrees with Judge Bazis that the officers' entry was justified by their reasonable belief the occupants of Polite's apartment and others were in imminent danger.

As Judge Bazis indicated in her Findings and Recommendation, cases reaffirming the constitutionality of reasonably limited detention incident to a search, an investigative stop, or while a warrant is being procured, are legion. Filing 59 at 9; *see, e.g. Illinois v. McArthur*, 531 U.S. 326 (2001). There is no question officers' detention of Defendant was justified and appropriately limited given the nature of their investigation.

Whether the defendant was in custody for *Miranda* purposes prior to his arrest is admittedly a closer question, but one Judge Bazis also resolved correctly. In *United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990), the court set forth a non-exhaustive list of six factors for courts to consider in assessing whether a defendant was in custody. The Court will not repeat them here as they are sufficiently explained in the Findings and Recommendation. *See* Filing 59 at 10. The Court notes

that the question of custody "cannot be resolved merely by counting up the number of factors on each side of the balance." *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). "The ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." *Id.* at 828.

Polite was well advised of why police were in his home, the nature of the anticipated delay, the reason for his detention, and that the investigation was focused on the apartment as a source of illicit substances rather than any particular occupant of the apartment. A review of the body camera footage makes clear that Polite freely spoke with officers and co-occupants throughout the encounter, freely denied police permission to search his home without a warrant, and sat with his guests, albeit in handcuffs, in his own living room and kitchen throughout the encounter. Thus, the inherent coercion that typifies formal arrest was not present. Polite expressed surprise when he was informed his cousin was being arrested despite his cousin being having been detained before and during the search just as he was, further indicating that even Polite himself understood he was not yet formally in custody up to that point.

The Court also agrees with Judge Bazis that Polite was not interrogated pre-*Miranda*. *See* Filing 59 at 13-16. Routine questions attendant to a search warrant or for identification purposes are not interrogation. *See, e.g.*, *United States v. Tapia-Rodriguez*, 968 F.3d 891, 894-95 (8th Cir. 2020). Similarly, in all but rare cases, officer responses to a defendant's questions are not interrogation. *United States v. Smialek*, 970 F.3d 1070, 1073 (8th Cir. 2020) (citing *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 837 (8th Cir. 2014)). Sergeant Martin testified he did not intend to illicit any incriminating responses when speaking to Polite and his guests about the case, often in response to their own statements or inquiries, and his body camera footage supports his testimony. The footage reveals that most of the conversation that occurred between officers and

6

Polite was the result of Polite's instigation. In particular, Polite's statements concerning his cousin's innocence were obviously unprompted by any interrogation; they were a spontaneous and voluntary response to his cousin's arrest. Polite asked questions of the officers, they gave succinct and informative answers, and he then professed his cousin's innocence. Similarly, explanations of the investigation as a "potential homicide investigation" and noting that a victim was not yet "out of the woods," even after she had become responsive, were not "reasonably likely to illicit an incriminating response." See *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Thus, the Court concurs entirely with the Magistrate Judge's assessment of Defendant's Motion to Suppress, and the Findings and Recommendation should be adopted in its entirety. Accordingly,

IT IS ORDERED:

1. Defendant's Objection, Filing 62, is overruled;
2. The Magistrate Judge's Findings and Recommendation, Filing 59, is adopted;
3. Defendant's Motion to Suppress, Filing 26, is denied; and
4. The Clerk of Court is ordered to terminate the pending motions at Filing 26, Filing 59, Filing 62, and Filing 63.

Dated this 25th day of April, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge